DUNCAN McCALL et ux. *versus* SIMEON M. HOUGH and PETER McPHERSON, Executors, etc. of ROBERT FINDLEY, Deceased.

March 29, 1842.

J. Goodrich & W. Draper, attorneys for appellants.
O. D. Richardson, attorney for respondents.

[INDORSEMENT]

*Sup. Court* 4th Cir. 1842

McCall et ux.
vs.                  app. from
Hough et al          Judge Probate

Mem° of Opinion—
29 March '42—

[OPINION]

Duncan McCall and
Janette McCall, his wife
    Appellants
Simeon M. Hough & Peter
McPherson, Ex^{rs} of the last
Will & Testament of Rob^{t}
Findley, deceased,
    Respondants

This is an appeal by Duncan McCall & wife heirs at law of Rob^{t} Findley, deceased, from the decree of the Judge of Probate for the County of Oakland, allowing probate, and establishing the last will and testament of the deceased, Rob^{t} Findley.

The cause, by the stipulation of the parties, was heard and argued at bar, at the last term of this Court in the 4th Circuit—

Several reasons were assigned for the appeal, but only one has been insisted upon before this Court, which is that the execution of the said will was not duly proved—

The will appears to have been executed on the 12 July 1838—and devised Real estate—

It was objected that there was no evidence that the Wit. saw the Testator sign his name to the will —— or that he declared in their prescence that it was his last will and testament —or in the last place that the Signature was his—

On the hearing before this Court, the three subscribing witnesses were produced & sworn on the part of the Repondants—

*Theron T. Armstrong*—one of these wit.—testified that on or about the date of the will—(12 Aug. '38) the testator came to the field where he, Le Roy Armstrong and Sam^{l} Clark, the other subscribing wit., were at work and requested

them to go to Mr McPherson's house—said he would not detain them long—He did not say what he wanted of them—They went with him to McPherson—After they went into the house they were requested to witness a paper laying on the table—

Mr Hough, one of the Executors, and the person who drew the will, was there, and directed wit. and the others where to write their names—The paper was so folded up that wit. only saw the name of deceased to the paper——Wit. signed the paper & saw the other two wit.—Le Roy Armstrong and Sam' Clark sign it—The will produced and shown to wit. is the same paper signed by him and the other witnesses—The deceased was present in the same room near by when they all signed the will as witnesses—No one spoke of it as the will of deceased at that time—Wit. supposed he knew what it was, as the deceased had before spoken to him about making his will—The wit: states that he did not see the deceased sign the paper, nor him [hear] him say that it was signed by him—or that it was his last will & testimony—The paper had the signature of deceased to it, when wit. subscribed his name as a witness—

*Le Roy Armstrong*—testified nearly to the same facts—and says further, that when the three wit. went into McPhersons house with the deceased, Hough asked the deceased if those were his witnesses—Deceased nodded assent, and said they were—that he signed as a wit. with T. T. Armstrong and Sam' Clark—That the deceased was present, and looking on when the witnesses subscribed the paper—That after all the witnesses had signed Hough took up the paper and gave it to the deceased, who delivered it back to Hough at the same time saying something which witness did not notice or understand—Wit. does not recollect whether he saw deceased name

written on the paper at the time witness signed it—did not hear him say that he had signed it—

*Sam¹ Clark*—was present and subscribed his name as a witness to the paper—same paper now shown him— — Before the witnesses signed, thinks deceased went to the table and sign something—Is not positive, but thinks such was the fact—Thinks that after Hough had done writing, the deceased went to the table took up the pen and signed the paper—After the witnesses had all signed Hough took the paper and handed it to deceased who immediately delivered it back to him, saying something which witness did not understand—

Hiram A. Hills—was called to prove that the signature to the will to be the hand writing of the deceased—and testified he had seen him write two or three times, and thinks the signature to the will is the hand writing of deceased—

*Simeon Hough,* one of the Ex^rs and one of the Respondants, was then offered as a wit. by the Respondants in support of the will—to show the due Execution &c—

Objection to the competency of this wit. was made by the appellants, on the ground of interest, being a party to the proceeding &, and liable under our Stat. for costs in case the decree of this Court should disaffirm the will—

The testimony was heard by the Court, subject however, to be rejected if on examination the Court should be of the opinion that the Ex^r was an incompetent wit.—

The view I have taken of this case, however, renders it unnecessary to decide this point, or to consider the testimony of the witness—

The Respondants also called Dan¹ Rowe as a witness to

prove the declarations of the deceased made after the date of the will, that he had made a will and left it in the hands of Mr Hough—Appellants objected to this evid. as inadmissable—but the Court received it subject to be rejected and disregarded, in case they should be of opinion on $ex^n$ that it was not admissable

—But for the reason before given it is not necessary to decide the question, or to take the testimony into consideration——

—Taking therefore only the testimony of the three subscribing witness[es] and the testimony of Mr Hills who [testified] to the signature of the Deceased to the will—Is the Evidence sufficient to establish the due execution of the will under the Statute?

On the part of the appellants it is contended that the testator must sign the will in the presence of the subscribing witnesses, or must declare in their presence and hearing that he signed the same, or that it was his last will and testament—

The act of the 27 July 1818, entitled "An Act prescribing the manner of devising Land, Tenements and Hereditaments"—Which was in force at the time this will appears to have been executed, enacts

"That all devises and bequests of any lands or tenements, shall be in writing and signed by the party so devising the same, or by some person in his presence and by his express direction, and shall be *attested* and *subscribed* in the *presence* of the *said Devisor*, by three or more credible witnesses, or else shall be utterly void, and of no effect."—

This is a transcript of the 5 Sect of the Stat of 29 ch. II—, and in relation to that Stat. the principles by which it is to be construed, have long been settled in England, and also in this country, where the same phraseology has been adopted by the Legislature—

In England it was never questioned but that the attesta-

tion of the witnesses must be in the presence of the Devisor, or that the witnesses must either see him actually sign the Devise or that the Devisor must declare to them that it is his last will, or must acknowledge that he had signed the same—

6 Cr. Dig. p. 60.   It was indeed for some time questioned whether such acknowledgement by the Devisor in the presence of wit. that he had signed the instrument, was a sufficient compliance with the Stat., or whether the witnesses ought not to attest to the very act of signing by the Devisor—

Stonehouse vs. Evelyn. 2 P. W$^{ms}$ 264—[3 P. W$^{ms}$ 252]
Grayson vs. Atkinson. 3 Ves. 454—[2 Ves. S$^r$ 454]

But it was finally settled 1 Ves. Ju$^r$ 10 [11] Ellis vs. Smith, when Ld Hardwicke, assisted by Sir John Strange, Ld. Ch. J. Willes and Ld Ch. B. Parker, in which it unanimously resolved that the declaration of a testator before 3 wit. that a paper was his will was equivalent to signing it before them, and constituted a good will within the 5th Section of the Stat. frauds—And there has never been any relaxation of this rule in England—

—Indeed how can any meaning be given to the act requiring that the 3 persons shall attest and subscribe as witnesses—unless this construction be adopted? what do they attest, or witness but the *execution* of the will by the testator?—If this act of the testator is not attested and witnessed by the three witnesses, to what do they attest, or witness?—

In this case one of the wit. was under the impression that he saw the testator sign a paper—but the other two think that the name was to the paper when they first saw it, and when they subscribed as witnesses— —All must see the act of signing, or the testator must acknowledge that he had signed it, or declare that it is his will &c—

The testimony therefore of the Executor Mr Hough, even if admissable, could not avail anything—nor does the testimony of Mr Hills who testified to the hand writing of the testator—

. The three credible witness[es] are placed around the testator by the Legislature for the express purpose of proving the due execution of the will, and their testimony alone can support it—

This court therefore doth order adjudge and decree that the decree of the Judge of Probate be reversed, and that the said will and testament—be altogether held for nought—and void—